Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
FRANK E. GARCIA,                                          )                  No. 08-04-00108-CV
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  65th District Court
)
CHRISTINE R. GARCIA,                                  )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 2003CM5943)

O P I N I O N

            This is an appeal from a division of property incident to divorce. For the second time in a
matter of days, we are presented with an amorphous award of “reimbursement” in favor of the wife. 
On appeal, Frank Garcia challenges both the award of reimbursement and the disproportionate
division of the community estate. For the reasons that follow, we affirm.
FACTUAL SUMMARY
            Frank and Christine Garcia married on February 14, 1999. They purchased a home for
$105,000 shortly after marriage. Christine withdrew $15,060.66 from her separate property
retirement account of which approximately $3,000 was paid as the down payment and at least $7,000
was spent for improvements. The couple signed a promissory note for $102,000. At the time of
trial, the residence had a fair market value of $110,000; the parties owed approximately $103,000
because they had refinanced in 2003.
            Christine moved out of the home on May 2, 2003 and filed a divorce petition on
September 11, 2003. In her pleadings, she alleged that she had contributed separate funds to the
community estate for which she had not been adequately compensated. She sought both common
law reimbursement and statutory reimbursement via economic contribution. In her inventory and
appraisement, she characterized the home as community property and listed what she referred to as
a reimbursement claim in the amount of $15,060.56.


 At trial, she asked that she be awarded
$10,000 to equalize the division of the community estate.
PROCEDURAL SUMMARY
            The procedural posture of the case merits discussion. A bench trial was conducted before
Associate Judge Jose Juarez on April 1, 2004. Christine was represented by counsel while Frank
appeared pro se. Judge Juarez completed a standard form entitled “Findings and Recommendation
in Final Divorce.” Frank timely filed a handwritten notice of appeal to the referring court. However,
it does not appear from the record that a hearing was either requested or conducted. The findings
of Judge Juarez were adopted and signed by the Honorable Alfredo Chavez on April 12, 2004 and
the final decree of divorce was signed on April 16. If hearings were conducted on either April 12
or April 16, we do not have the benefit of a reporter’s record. Our record consists of the reporter’s
record from the evidentiary hearing conducted by Judge Juarez on April 1 and the clerk’s record. 
One exhibit was offered during the hearing, but it was not formally admitted into evidence, nor do
we have a copy of it. While Christine’s inventory and appraisement appears in the clerk’s record,
and as an appendix in Frank’s brief, it was not offered into evidence at trial. It does appear from the
record that Judge Juarez had a copy before him. 
            The final decree awarded the marital home to Frank and required him to pay Christine
$10,000 “for her reimbursement claim in the real property awarded in this divorce decree to [him]. 
In a separate section, the following recitation appears:
The court finds that separate funds of [Christine] were used for the benefit of the
community estate in the sum of $10,000.00. The Court orders that the community
reimburse [Christine’s] separate estate as follows: $5,000.00 by [Christine] to
[Christine] and $10,000.00 by [Frank] to [Christine]. [Emphasis added].
We presume this “finding” was derived from Judge Juarez’s recommendations, but it does not track
them precisely. Judge Juarez found “that sep. funds of [Christine] were used for benefit of comm.
in the sum of $15,000. Court orders comm. reimburse [Christine] sep. estate as follows: $5,000 by
[Christine] $10,000 by [Frank] on or before 9-1-04.” Thus, the highlighted number in the decree
appears to be a typographical error. Frank did not request either traditional or statutory findings of
fact and conclusions of law. See Tex.Fam.Code Ann. § 6.711 (Vernon Supp. 2004-05);
Tex.R.Civ.P. 296. We have previously declined to construe the findings of the associate judge as
“findings of fact” of the referring court.” See Roberts v. Roberts, 999 S.W.2d 424, 436 (Tex.App.--El Paso 1999, no pet.). 
SUFFICIENCY OF THE EVIDENCE
            In his sole issue for review, Frank challenges the sufficiency of the evidence to support the
reimbursement award. He also contends the error resulted in an abuse of discretion because it led
to a grossly disproportionate division of the community estate. Our analysis must of necessity
employ overlapping appellate standards of review. We first address the distinctions between them
and how they overlap in the family law arena.
Standards of Review
Traditional Sufficiency Review
            In considering a legal sufficiency or “no evidence” point, an appellate court considers only
the evidence which tends to support the jury’s findings and disregards all evidence and inferences
to the contrary. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); Worsham Steel Co. v. Arias, 831
S.W.2d 81, 83 (Tex.App.--El Paso 1992, no writ). If any probative evidence supports the jury’s
determination, it must be upheld. In re King’s Estate, 150 Tex. 662, 244 S.W.2d 660, 661-62
(1951); Neily v. Aaron, 724 S.W.2d 908, 913 (Tex.App.--Fort Worth 1987, no writ). 
            In a bench trial, findings of fact are the equivalent of a jury answer to the special issues. 
Associated Telephone Directory Publishers, Inc. v. Five D’s Publishing Co., 849 S.W.2d 894, 897
(Tex.App.--Austin 1993, no writ); Lorensen v. Weaber, 840 S.W.2d 644 (Tex.App.--Dallas 1992),
rev’d on other grounds sub nom.; Exxon Corp. v. Tidwell, 816 S.W.2d 455, 459 (Tex.App.--Dallas
1991), rev’d on other grounds, 867 S.W.2d 19 (Tex. 1993); A-ABC Appliance of Texas, Inc. v.
Southwestern Bell Tel. Co., 670 S.W.2d 733, 736 (Tex.App.--Austin 1984, writ ref’d n.r.e.). 
Because Frank did not request either traditional or statutory findings of fact, we must presume that
the trial court made all the necessary findings to support its judgment. Pharo v. Chambers County,
Texas, 922 S.W.2d 945, 948 (Tex. 1996); Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). 
If the trial court’s implied findings are supported by the evidence, we must uphold the judgment on
any theory of law applicable to the case. Worford, 801 S.W.2d at 109. In determining whether some
evidence supports the judgment and the implied findings of fact, we consider only that evidence most
favorable to the issue and disregard entirely the contrary evidence. Id. Frank has not raised a factual
sufficiency complaint.
Abuse of Discretion Standard
            Most of the appealable issues in a family law case are evaluated against an abuse of
discretion standard, be it the issue of property division incident to divorce or partition,
conservatorship, visitation, or child support. Tate v. Tate, 55 S.W.3d 1, 5-6 (Tex.App.--El Paso
2000, no pet.). An appeal directed toward demonstrating an abuse of discretion is one of the tougher
appellate propositions. While the appellant may challenge the sufficiency of the evidence to support
findings of fact, in most circumstances, that is not enough. If, for example, an appellant is
challenging the sufficiency of the evidence to support the court’s valuation of a particular asset, he
must also contend that the erroneous valuation caused the court to abuse its discretion in the overall
division of the community estate. 
             The term “abuse of discretion” is not susceptible to rigid definition. Landon v. Jean-Paul
Budinger, Inc., 724 S.W.2d 931, 934 (Tex.App.--Austin 1987, no writ). The test for an abuse of
discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case
for the trial court’s action, but whether the court acted without reference to any guiding rules and
principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985), cert. denied,
476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986), citing Craddock v. Sunshine Bus Lines, 134
Tex. 388, 133 S.W.2d 124, 126 (Tex.Comm.App.--1939, opinion adopted). Stated differently, the
appropriate inquiry is whether the ruling was arbitrary or unreasonable. Smithson v. Cessna Aircraft
Company, 665 S.W.2d 439, 443 (Tex. 1984); Landry v. Travelers Insurance Co., 458 S.W.2d 649,
651 (Tex. 1970). The mere fact that a trial judge may decide a matter within his discretionary
authority in a different manner than an appellate judge in a similar circumstance does not
demonstrate that an abuse of discretion has occurred. Southwestern Bell Telephone Co. v. Johnson,
389 S.W.2d 645, 648 (Tex. 1965); Jones v. Strayhorn, 159 Tex. 421, 321 S.W.2d 290, 295 (1959).
Which Standard Do We Apply?
            The Family Code requires that the trial court divide the estate of the parties in a manner that
is just and right having due regard for the rights of each party. Tex.Fam.Code Ann. § 7.001
(Vernon 1998). There is no requirement that the court effectuate an equal division. Murff v. Murff,
615 S.W.2d 696, 699 (Tex. 1981). The courts have determined a number of factors which may
justify a disproportionate division. Murff, 615 S.W.2d at 698-99. In reviewing the equitable remedy
fashioned by the trial court in achieving a just and right division, we must determine not only
whether the trial court’s findings are supported by the evidence, we must also determine whether
error, if established, caused the trial court to abuse its discretion. We have repeatedly held that once
it has been determined that the abuse of discretion standard applies, an appellate court should engage
in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise
its discretion; and (2) Did the trial court err in its application of discretion? Knight v. Knight, 131
S.W.3d 535, 539 (Tex.App.--El Paso 2004, no pet.); Sandone v. Miller-Sandone, 116 S.W.3d 204,
206 (Tex.App.--El Paso 2003, no pet.); Lindsey v. Lindsey, 965 S.W.2d 589, 591 (Tex.App.--El Paso
1998, no pet.). The traditional sufficiency review comes into play with regard to the first question;
however, our inquiry cannot stop there. We must proceed to determine whether, based on the
elicited evidence, the trial court made a reasonable decision. Stated inversely, we must conclude that
the trial court’s decision was neither arbitrary nor unreasonable.
A Creature Called Reimbursement
            Family law practitioners have dealt with reimbursement for decades, although the magic
word did not appear in the Texas Family Code until the Legislature created a statutory right of
economic contribution in 2001. Tex.Fam.Code Ann. Title 1, Chapter 3, Subchapter E, § 3.401 et
seq., added by Acts 2001, 77th Leg., R.S. ch. 838, § 2, eff. Sept. 1, 2001. Generally speaking, these
amendments were not well received by family law practitioners and both bench and bar have
struggled with their application. Christine pled for both common law reimbursement and economic
contribution. While the record does not reveal the precise theory upon which the $10,000 award was
based, we can discern from the testimony how the number was derived: $3,000 refers to the down
payment and $7,000 refers to the improvements. For reasons which we will detail, Christine’s
recovery for the down payment hinges on common law reimbursement while her recovery for
improvements falls within the realm of economic contribution.
Common Law Reimbursement
             Although case law is replete with references to a “right” of reimbursement, the rule of
reimbursement is purely an equitable one. Vallone v. Vallone, 644 S.W.2d 455, 458 (Tex. 1982),
citing Colden v. Alexander, 171 S.W.2d 328 (Tex. 1943). It is not an interest in property or an
enforceable debt, per se, but an equitable right which arises upon dissolution of the marriage through
death, divorce or annulment. Id., citing Burton v. Bell, 380 S.W.2d 561 (Tex. 1964); Dakan v.
Dakan, 83 S.W.2d 620 (Tex. 1935). An equitable right of reimbursement arises when the funds or
assets of one estate are used to benefit and enhance another estate without itself receiving some
benefit. Id.
            A claim for reimbursement of funds expended by an estate for improvements to another
estate is to be measured by the enhancement value to the benefitted estate. Kimsey v. Kimsey, 965
S.W.2d 690, 700 (Tex.App.--El Paso 1998, pet. denied), citing Anderson v. Gilliland, 684 S.W.2d
673, 675 (Tex. 1985). This measurement is applied whether the claim for reimbursement is based
on funds expended for payment of a purchase money debt or for a capital improvement to another
estate. Id., citing Penick v. Penick, 783 S.W.2d 194, 197 (Tex. 1988). The party claiming the right
of reimbursement has the burden of proof. Id., citing Jensen v. Jensen, 665 S.W.2d 107, 110 (Tex.
1984); Vallone, 644 S.W.2d at 459.
            Since common law reimbursement is an equitable claim, a court of equity is bound to look
at all facts and circumstances to determine what is fair, just, and equitable. Id., citing Penick, 783
S.W.2d at 197-98; Magill v. Magill, 816 S.W.2d 530, 535 (Tex.App.--Houston [1st Dist.] 1991, writ
denied). This allows for consideration of offsetting benefits. Id. at 700-01, citing Jensen, 665
S.W.2d at 109; Magill, 816 S.W.2d at 535. Great latitude must be accorded to the trial court in
applying equitable principles to value such a claim, for it is not just a balancing of the ledgers
between competing marital estates. Id. at 701, citing Penick, 783 S.W.2d at 198; Magill, 816 S.W.2d
at 535. The discretion to be exercised in evaluating a claim for reimbursement is equally as broad
as the discretion exercised by a trial court in making a just and proper division of the community
estate. Id., citing Penick, 783 S.W.2d at 198.
            The economic contribution statute does not apply to purchase money expended by Christine’s
separate estate. The use of separate property in the acquisition of property during marriage gives the
contributing spouse equitable title to the extent the contribution is not a gift. The Amarillo Court
of Appeals has determined that contributing separate funds as a down payment on real estate does 
not constitute an economic contribution under the statute. In the Matter of the Marriage of Royal,
107 S.W.3d 846, 851-52 (Tex.App.--Amarillo 2003, no pet.). One commentator has agreed:
 

[R]emember that the statute doesn’t apply until the day after title is determined. So,
if you have a mixed title character claim, don’t look to the statute for the answer. 
Look to all of the mutation/mixed title case law. The Economic Contribution Statute
only applies after title is determined.

* * * * *
 
Character is determined at the time the property is purchased. So down payments
and debt assumed at closing are used to determine the initial character of the property
and are not economic contribution claims.

Jim Penn C.P.A., Theory of Economic Contribution, Vol. 23 Family Law Forum Issue 4 p. 4
(December 2004).
            In Royal, the court of appeals affirmed an award of reimbursement to the husband in an
amount equal to his separate property down payment on the community residence. Frank has not
disputed at trial or on appeal that Christine paid the down payment from her separate funds. He
explains in his brief that he also contributed separate property, but he did not plead it and he did not
trace it. More importantly, since he has not raised a factual sufficiency complaint, we do not address
the controverting testimony. Because Christine’s testimony supports the common law
reimbursement claim, we find the evidence sufficient to support an award of $3,000.
Economic Contribution
            A marital estate that makes an economic contribution to property owned by another marital
estate has a claim for economic contribution with respect to the benefitted estate. Tex.Fam.Code
Ann. § 3.403(a). For purposes of our analysis, “economic contribution” is the dollar amount of
capital improvements to property other than by incurring debt. Tex.Fam.Code Ann. § 3.402(a)(6).
The amount of a claim for economic contribution is determined by multiplying the equity


 in the
benefitted property on the date of divorce by a fraction. Id. § 3.403(b). The numerator is the
amount of the economic contribution by the contributing estate. The denominator is equal to the sum
of that same economic contribution and the contribution by the benefitted estate to the equity in the
property. Where the benefitted estate is the community estate, the amount of the contribution by the
benefitted estate is measured by determining the net equity of the community in the asset as of the
date of the first economic contribution by the contributing separate estate and any additional
economic contribution to the equity owned by the community thereafter. Id.; see LaFrensen v.
LaFrensen, 106 S.W.3d 876, 879 n.2 (Tex.App.--Dallas 2003, no pet.). In a decree of divorce, the
court shall determine the rights of both spouses in a claim for economic contribution as provided by
Family Code Chapter 3, Sub-chapter E, in a manner that the court considers just and right, having
due regard for the rights of each party. Tex.Fam.Code Ann. § 7.007(a).
            Equity at the time of divorce. The statutory formula requires a court to multiply the home’s
equity at the time of divorce by a fraction. The owner of real property may testify to her opinion of
its fair market value, even if she would not qualify to testify about the value of property belonging
to someone else. See Porras v. Craig, 675 S.W.2d 503, 504 (Tex. 1984); A.G.E., Inc. v. Buford, 105
S.W.3d 667, 677 (Tex.App.--Austin 2003, pet. denied). Christine testified that the fair market value
at the time of divorce was $110,000. Due to refinancing, the balance of the lien was $103,000. 
Thus, the equity (FMV less amount of the lien) was $7,000.
            Numerator of the fraction. The numerator is $7,000, the sum of the economic contribution
claimed by Christine’s separate estate. She testified that she spent $7,000 of her retirement funds
for improvements to the home, including raising the rock wall, installing two large gates in the back
yard, two additional large gates in the side yard, building a bar onto the kitchen, installing an
extensive vanity with a closet in the master bedroom and carpeting throughout the home. All of
these improvements were made before the couple ever moved in. 
            Denominator of the fraction. The denominator is the sum of Christine’s economic
contribution ($7,000), the community estate’s equity in the home on the date of the first contribution
(none), and any additional economic contribution to the benefitted property by the benefitted estate
after the first contribution by the contributing estate. Economic contribution requires the reduction
of the principal amount of that part of a debt incurred during marriage and secured by a lien on the
property. It also applies to the dollar amount of the refinancing of the mortgage to the extent the
refinancing reduces the principal. Even Frank admitted that the refinancing resulted in a mortgage
of $103,000. The record thus reflects that the refinancing did not reduce the principal. The
denominator, then, is $7,000 + 0 + 0 = $7,000.
            The fraction.   $7,000 = 1
 $7,000 
            Calculation. $7,000 X 1 = $7,000

The amount of the economic contribution claim is $7,000. Because the amount of the claim does
not exceed the equity in the home, there is no violation of Section 3.403(d)(the amount of a claim
under this section may not exceed the equity in the property on the date of divorce). Tex.Fam.Code
Ann. § 3.403(d). 
 

If It Walks Like a Duck . . .
            Without the benefit of findings of fact, we cannot ascertain precisely the theory of recovery
employed by Judge Juarez. We must presume that the trial court made all the necessary findings to
support its judgment and if the implied findings are supported by the evidence, we must uphold the
judgment on any theory of law applicable to the case. The judgment here may be affirmed by
applying economic contribution to the improvements and common law reimbursement to the
purchase money. 
            Must we reverse because the trial court mislabeled the total award as “reimbursement” and
did not allocate specific dollars to a proper theory of recovery? We find no error in attaching a
misnomer to the remedy employed. We conclude that the constituent elements are properly aligned:
the pleadings support the evidence, the evidence supports the implied findings of fact, and the
findings support the judgment.
DISPROPORTIONATE DIVISION
            The second part of Frank’s argument is that the reimbursement award so skewed the overall
division of the community estate as to constitute an abuse of discretion. He suggests that Christine
was awarded 92%. We disagree with his calculations. Christine testified that Frank had $11,440
in community property in his possession. This number appears in her inventory, which although not
admitted into evidence, serves as the basis for Frank’s computations. The itemization to which he
refers includes only personalty; it does not include the residence which he was awarded. Christine’s
testimony also established that the equity in the home was $7,000, which must be added to Frank’s
column. In reality, Frank was awarded community assets totaling $18,440; Christine was awarded
community property valued at $5,900. Frank assumed indebtedness of $2,500 while Christine
assumed debts of $6,000. The net award to Frank is $15,940 and the net to Christine is a negative
$100. Taking into consideration the reimbursement award, we subtract $10,000 from Frank’s assets
and add $10,000 to Christine’s. Frank ends up with $5,940 while Christine receives $9,900. This
results in a 62%-38% division in Christine’s favor. While this is a disproportionate division, it is
not as grossly disproportionate as Frank contends.
            Frank complains that there is “no evidence” to support the disproportionate division. Again
we must disagree. Our jurisprudence commonly refers to the “Murff” factors which a court may
consider in making a disproportionate division. Murff, 615 S.W.2d at 698-99. These include the
disparity of income or earning capacity, the spouses’ capacities and abilities, benefits which a party
not at fault would have derived from a continuation of the marriage, business opportunities,
education, relative physical conditions, relative financial condition and obligations, disparity of ages,
size of separate estates, and nature of the property. Id. Here, the trial court heard evidence relating
to the disparity of income and the size of the parties’ separate estates. Christine testified that she
earned $6,500 in the previous year while Frank earned $50,000. Her separate estate totaled $4,250 
while Frank’s totaled $9,650, excluding his retirement benefits. Frank admitted that his retirement
account contained “$40,000 or so.” There was sufficient evidence from which the trial court could
conclude that a disproportionate division was just and right. We find no abuse of discretion. We
overrule the sole point and affirm the judgment of the trial court.


June 2, 2005                                                                
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.